UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SALLY A. BACHOWSKI,

            Plaintiff,

      v.                                              **DECISION AND ORDER**
                                                            19-CV-572S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

      1.      Plaintiff Sally A. Bachowski brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security Administration on November 24, 2015. (R.[1] at 129.) Plaintiff alleged disability beginning on June 16, 2015, due to nightmares, difficulty sleeping, PTSD, anxiety, panic attacks, fibromyalgia, plantar fasciitis, allergies, erythema nodosum, and high blood pressure. (R. at 116.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). On March 16, 2018, ALJ Rosanne Dummer held a hearing, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 65-99.) Vocational Expert Cindy Burnette also appeared and testified by telephone. At the time of the hearing, Plaintiff was 50 years old, with a twelfth-grade education and

---

[1] Citations to the underlying administrative record are designated as "R."

some college, prior work experience as teacher's aide, and prior experience as a volunteer firefighter. (R. at 69,129, 217.)

3. The ALJ considered the case *de novo* and, on June 6, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 18-37.) On March 6, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on May 3, 2019, challenging the Commissioner's final decision.[2]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 13, 14.) Plaintiff filed a response on March 4, 2020 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's June 6, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

>mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 16, 2015. (R. at 20.) At step two, the ALJ found that Plaintiff has the severe impairments of headaches, temporomandibular joint syndrome/trigeminal

neuralgia, erythema nodosum (skin inflammation), cervical and lumbar degenerative disc disease, obesity, depression, obsessive compulsive disorder, posttraumatic stress disorder, alcohol and cannabis dependence (partial remission), and fibromyalgia. (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 21.)

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to

> Perform light work…. [She] could lift/carry twenty pounds occasionally and ten pounds frequently; sit six of eight hours, two hours at a time; and stand/walk six of eight hours, two hours at a time. She could occasionally reach overhead. She could frequently reach in other directions and frequently push/pull. [She] could occasionally operate foot controls. She should not operate a motor vehicle, work at unprotected heights, climb ladders/scaffolds, kneel, crouch or crawl. She could occasionally climb stairs/ramps, balance and stoop. She could occasionally work with moving mechanical parts, and occasionally tolerate humidity/wetness, pulmonary irritants, … extremes of heat/cold and vibration. She could tolerate moderate (office) noise. Secondary to mental impairments, [she] could understand, remember, and carry out instructions for routine, repetitive unskilled work. She could sustain attention for two segments of time in an eight-hour day. The claimant could tolerate brief and superficial interactions with coworkers, supervisors, and the public…. She could adapt to changes in the work setting for routine repetitive type work. She should avoid fast pace or high production goal work.

(R. at 23.)

12. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 35.) At step five, the ALJ found that there are jobs that exist in

5

significant numbers in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 36.)

13. Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to give proper weight to the opinions of treating physicians Dr. Mechtler and Dr. Martinez, and improperly considered the opinion of non-examining medical expert Dr. Fisher. Defendant argues that the ALJ gave proper consideration to all medical opinions in the record.

14. An ALJ is required to consider "every medical opinion" received. 20 C.F.R. § 416.927(c). A treating physician's opinion is entitled to controlling weight in cases where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d). When a treating physician's opinion is not consistent with the rest of the record, it does not sustain controlling weight. See Domm v. Colvin, 579 F. App'x 27, 28 (2d Cir. 2014); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

15. If the ALJ decides the opinion of a treating physician is not entitled to controlling weight, she must determine how much weight, if any, to give it. In doing so, she must "explicitly consider" factors such as: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008)); 20 C.F.R. § 404.1527(c)(2). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision

for the weight [it gives the] treating source's [medical] opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

16. A failure to explicitly consider every factor does not necessitate remand, as long as the reviewing Court is be able to determine that the ALJ considered these factors. Estrella v. Berryhill, 925 F.3d 90, 96 (2d Cir. 2019) ("failure to 'explicitly' apply the Burgess factors when assigning weight ... is a procedural error" but does not require remand if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed").

17. Plaintiff was treated at the Dent Neurologic institute for headache and trigeminal neuralgia during 2017 and 2018. She presented on August 8, 2017, with both chronic daily headaches and chronic migraines. (R. at 735.) Her headaches were seen as linked to her cervicalgia (neck pain) and myofascial pain. (R. at 728.) Sumatriptan was found to be effective in aborting her migraines, though as of October 2017, she continued to experience both daily headaches and migraines occurring about twice per month. (R. at 726, 728-29.) She underwent trigger point injections for her cervicalgia and associated headaches. (R. at 730, 733.) An MRI of her brain on September 8, 2017, was abnormal, as was an MRI of her cervical spine on January 22, 2018. (R. at 741, 746.)

18. Plaintiff was treated by Dr. Carlos Martinez for fibromyalgia from 2014 on. (See R. at 396.) Plaintiff weaned off prednisone in 2015, under Dr. Martinez's guidance, but in 2016, after finding tender trigger points on examination, Dr. Martinez began treatment with Gabapentin. (R. at 685-86.) Plaintiff later resumed prednisone, and started Baclofen, to address her symptoms. (R. at 686, 678, 670.)

19. On March 6, 2018, Dent neurologist Dr. Laszlo Mechtler completed a "cervical spine residual functional capacity questionnaire" on March 6, 2018. (R. at 1413-17.) In it, he noted that he had treated Plaintiff since August 8, 2017. (R. at 1413.) He diagnosed Plaintiff with cervicalgia and discussed her headaches in light of that impairment. Dr. Mechtler stated that Plaintiff had a chronic daily headache, as well as migraines 3-4 times per month. (R. at 1413.) Dr. Mechtler noted that Plaintiff's symptoms were nausea and vomiting, photosensitivity, inability to concentrate, exhaustion, visual disturbances, difficulty finding words, and weakness. (R. at 1414.) He stated that trigger point injections had been ineffective. (Id.) Dr. Mechtler opined that Plaintiff was likely to be absent from work more than 4 days per month, and stated that she should avoid loud noises, bright lights, and strong odors. (R. at 1417.)

20. Rheumatologist Dr. Carlos Martinez wrote a letter on Plaintiff's behalf on May 9, 2018. (R. at 1503.) He stated that Plaintiff's fibromyalgia symptoms had worsened over the past four years, and that she was no longer able to efficiently climb stairs, grip objects, or use her arms or feet in a repetitive fashion. (Id.)

21. The ALJ gave minimal weight to Dr. Mechtler's opinion, stating that treatment notes reflected the effectiveness of Sumatriptan in aborting Plaintiff's migraine headaches, and citing Dr. Fischer, a "medical expert," for the proposition that both cervicalgia and headaches were "subjective complaints." (R. at 31.) The ALJ also gave minimal weight to Dr. Martinez's opinion, finding it inconsistent with Dr. Martinez's treatment notes and the overall record evidence. (R at 32.)

22. The ALJ then gave significant weight to nonexamining "medical expert" Dr. Fischer, because his opinions were consistent with the overall record. The ALJ essentially

8

adopted as her RFC the opinion of Dr. Fischer that Plaintiff could perform a range of light work.

23. This Court finds that the ALJ did not properly apply the treating physician rule to any of these opinions. Regarding the opinions of Plaintiff's treating physicians Dr. Mechtler and Dr. Martinez, after deciding not to give them controlling weight, the ALJ was required to consider the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinions; their consistency with the remaining medical evidence; and whether the physician was a specialist. Selian, 708 F.3d 418. The ALJ did not perform this analysis.

24. Instead, the ALJ discounted Dr. Mechtler's opinion, because, as she noted, the record showed that Sumatriptan helped abort migraines, and because she considered cervicalgia and headaches to be subjective complaints. She made no mention of Dr. Mechtler's treating relationship with Plaintiff, or of his qualifications as a board-certified neurologist—seemingly a specialist .[3] In assessing Dr. Martinez's opinion, the ALJ made no mention of his long treating relationship with Plaintiff, instead noting that his opinion appeared to have been prepared "in contemplation of litigation," which is not a factor specified in the regulations. (R. at 32.) The ALJ's failure to explain her reasons for the weight she gave the opinions of Plaintiff's treating physicians was error. Newbury v. Astrue, 321 F. App'x 16, 17 (2d Cir. 2009) (citing Snell v. Apfel, 177 F.3d 128, 133 (2d

---

[3] "Dr. Mechtler serves as Medical Director of Dent Neurologic Institute as well as the Chief of Neuro-Oncology at Roswell Park Cancer Institute and is also the Director of the DENT Headache Center, Neuro-Oncology Center, and Cannabis Clinic, with attending assignments at Kaleida Health and the Roswell Park Cancer Institute. He is also a Professor of Neurology and Neuro-Oncology at the State University of New York at Buffalo. In addition, he is published in numerous publications and is currently the Principle (sic) Investigator of multiple clinical research protocols related to Headaches and Neuro-Oncology." https://www.dentinstitute.com/people/laszlo-l-mechtler-m-d/, accessed 8/21/2020.

Cir.1999)) ("Remand is appropriate where the ALJ fails to provide good reasons for not crediting the opinion of a claimant's treating physician.")

25. At the same time, the ALJ gave significant weight to the opinion of a nonexamining family medicine doctor. The regulations permit an ALJ to give more weight to an "other medical source" than to that of a treating physician, but in doing so, the ALJ is required to consider the same factors as for assessing any medical opinion: the treatment relationship, supportability, consistency with the record, and the specialization of the medical source. 20 C.F.R. §404.1527 (f)(1); (c)(1)-(6). Courts in the Second Circuit frequently hold that the opinion of a nonexamining medical advisor does not merit greater weight than that of an examining physician. Soto-Rivera v. Comm'r of Soc. Sec., No. 17-CV-6675-JWF, 2019 WL 2718236, at *3 (W.D.N.Y. June 28, 2019) ("An analytical standard related to the treating physician rule is the principle that in determining eligibility for benefits, the Commissioner should generally not rely on the medical opinions of non-treating and non-examining medical sources."). See also Vargas v. Sullivan, 898 F.2d 293, 295–96 (2d Cir. 1990) ("[T]he written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant."); Ciambra v. Colvin, No. 15-CV-3474 (SJF), 2017 WL 1323758, at *10 (E.D.N.Y. Mar. 27, 2017) ("Courts in the Second Circuit have observed that the medical opinion of a non-examining medical expert does not constitute substantial evidence and may not be accorded significant weight.").

26. Here, the ALJ gave more weight to Dr. Fischer's opinion than to that of Plaintiff's treating physicians without explaining that weight, as required by the regulations. The ALJ used the phrase "medical expert" several times to describe Dr. Fischer, but did not address the fact that Dr. Fischer never met or examined Plaintiff, and that he is a family medicine practitioner, not a specialist. The ALJ failed to properly explain her assessment of Dr. Fischer's opinion.

27. Defendant argues that the ALJ correctly gave minimal weight to Dr. Mechtler's opinion because the record shows the effectiveness of Sumatriptan, and because Plaintiff had stated that her "tension headaches were not disabling." (Docket No. 14-1 at p. 9.) The effectiveness of Sumatriptan does not by itself contradict Dr. Mechtler's opinion, especially given that the record also shows the persistence of Plaintiff's migraines, and the presence of abnormal cervical and brain MRIs. Defendant also argues that the ALJ correctly gave little weight to Dr. Martinez's opinion, because his records show that Plaintiff's fibromyalgia was stable on medication. But Dr. Martinez himself increased Plaintiff's medication and opined that her symptoms were worsening. And "[n]either a reviewing judge nor the Commissioner is 'permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion.'" Burgess, 537 at 131 (citing Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)).

28. As for Dr. Fischer, Defendant argues that the ALJ correctly found that his opinion was consistent with the evidence of record. But the regulations required the ALJ to consider the regulatory factors before giving Dr. Fischer's opinion great weight, especially when she used it instead of the opinions of two treating physicians. Defendant's arguments are therefore unpersuasive.

29.     In assessing the medical opinion evidence, the ALJ did not follow the treating physician rule, and remand is therefore warranted.

30.     Plaintiff also argues that the ALJ failed to reconcile inconsistencies between the opinion of Dr. Rita Figueroa and the ALJ's RFC determination.  Because remand is warranted on other grounds, this Court will not consider this argument here.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:     August 24, 2020
           Buffalo, New York


                                        s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                    United States District Judge